## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EDF INTERNATIONAL S.A.,                )
                                       )
               Petitioner,             )
                                       )        C.A. No.  08-167-JJF
       v.                              )
                                       )
YPF S.A.                               )
               Respondent.             )

## RESPONDENT YPF S.A.'S COMBINED OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS PETITION
## TO CONFIRM ARBITRATION AWARD AND ANSWERING BRIEF IN
## <u>OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARD</u>

Peter J. Walsh, Jr. (#2437)
David E. Moore (#3983)
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE  19899
Tel:  (302) 984-6000
pwalsh@potteranderson.com
dmoore@potteranderson.com

*Counsel for Respondent YPF S.A.*

OF COUNSEL:

Jonathan I. Blackman
Matthew D. Slater
Jordana E. Lambert
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY  10006
Tel:  (212) 225-2000

Dated:  July 16, 2008

# TABLE OF CONTENTS

Page (s)

TABLE OF AUTHORITIES ....................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT .............................................................................................................. 5

    I. EDFI FAILED TO PROPERLY SERVE YPF AND ACCORDINGLY THIS      5
       COURT LACKS JURISDICTION OVER YPF ...............................................

   II. THE COURT SHOULD EITHER DENY OR STAY THE CONFIRMATION
      MOTION BECAUSE THE ARBITRAL AWARD HAS BEEN SUSPENDED
      PENDING ANNULMENT PROCEEDINGS ................................................... 9

       A.  Confirmation Should Be Denied Because The Award Has Been
           Suspended In Argentina ........................................................................... 9

       B.  Confirmation Should Be Stayed Pending The Resolution Of The
           Argentine Annulment Proceedings ......................................................... 12

CONCLUSION ........................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*,
    No. 04 C 7731, 2005 WL 947126 (N.D. Ill. Apr. 12, 2005) ........................................ 15

*Americatel El Salvador, S.A. De C.V. v. Compania De Telecomunicaciones De El Salvador, S.A.*,
    No. 07-21940-Civ., 2007 WL 2781057 (S.D. Fla. Sept. 19, 2007).............................. 6

*Baker Marine (Nigeria) Ltd. v. Chevron (Nigeria) Ltd.*,
    191 F.3d 194 (2d Cir. 1999) ........................................................................ 11, 12

*Consorcio Rive S.A. v. Briggs of Cancun, Inc.*,
    No. Civ. A. 99-2204, 1999 WL 1009806 (E.D. La. Nov. 5, 1999) ............................. 15

*DeJames v. Magnificence Carriers, Inc.*,
    654 F.2d 280 (3d Cir. 1981) ........................................................................ 7

*Dimensional Commc'ns., Inc. v. OZ Optics Ltd.*,
    218 F. Supp. 2d 653 (D.N.J. 2002).............................................................. 7

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*,
    156 F.3d 310 (2d Cir. 1998) ....................................................................... 13, 14, 15

*Fertilizer Corp. of India v. IDI Mgmt., Inc.*,
    517 F. Supp. 948 (S.D. Ohio 1981)............................................................. 15-16

*Higgins v. SPX Corp.*,
    No. 1:05-Cv-846, 2006 WL 1008677 (W.D. Mich. Apr. 18, 2006)............................. 15

*Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*,
    No. Civ. A. 05-0423, 2005 WL 3533128 (W.D. Pa. Dec. 22, 2005) .......................... 15

*Karaha Bodas Co. LLC. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) ...................................................................... 10

*Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*,
    879 F. Supp. 389 (S.D.N.Y. 1995) ............................................................. 6

*Matter of Chromalloy Aeroservices*,
    939 F. Supp. 907 (D.D.C. 1996).................................................................. 12

Page(s)

*MGM Productions Group, Inc. v. Aeroflot Russian Airlines*,
No. 03 Civ. 0500, 2003 WL 21108367 (S.D.N.Y. May 14, 2003)
*aff'd on other grounds*, 91 Fed. Appx. 716 (2d Cir. 2004) .......................................... 16

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999) ......................................................................................... 8

*Nedagro B.V. v. Zao Konversbank*,
No. 02 Civ. 3946, 2003 WL 151997 (S.D.N.Y. Jan. 21, 2003) .................................... 15

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
484 U.S. 97 (1987) ........................................................................................... 8

*Sarhank Group v. Oracle Corp.*,
No. 01 Civ. 1258, 2002 WL 31268635 (S.D.N.Y. Oct. 9, 2002)
*vacated on other grounds*, 404 F.3d 657 (2d Cir. 2005) ............................................. 16

*Shurr v. Mun. City of Newark, Del.*,
No. C.A. 03-523-SLR, 2004 WL 332508 (D. Del. Jan. 28, 2004) ............................... 8

*Spier v. Calzaturificio Tecnica , S.p.A.*,
663 F. Supp. 871 (S.D.N.Y. 1987) .................................................................... 15

*Spier v. Calzaturificio Tecnica , S.p.A.*,
71 F. Supp. 2d 279 (S.D.N.Y. 1999) ................................................................. 11, 12, 15

*TermoRio S.A. E.S.P. v. Electranta S.P.*,
487 F.3d 928 (D.C. Cir. 2007) ......................................................................... 10, 11, 12

*Ukrvneshprom State Foreign Economic Enterprise v. Tradeway, Inc.*,
No. 95 Civ. 10278, 1996 WL 107285 (S.D.N.Y. March 12, 1996) ............................. 10, 14

*Volkswagenwerk A.G. v. Schlunk*,
486 U.S. 694 (1988) ......................................................................................... 6

<u>Statutes and Rules</u>

9 U.S.C. § 9 .................................................................................................... 5-6

9 U.S.C. § 207 ................................................................................................. 9

Page(s)

9 U.S.C. § 208 .................................................................................................... 5, 6

Fed. R. Civ. P. 4(f)(1) ........................................................................................ 6

<u>Other Authorities</u>

Albert Jan van den Berg, *Enforcement of Annulled Awards?,*
9 ICC Int'l Ct. Arb. Bull., Nov. 1998 ................................................................. 11

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
adopted June 10, 1958 ........................................................................................ 1, 9, 12

Hague Service Convention, Nov. 15, 1965,
20 U.S.T. 361, 656 U.N.T.S. 162 ....................................................................... 5, 6, 7

Respondent YPF S.A. ("YPF") hereby submits this memorandum in opposition of the motion of petitioner EDF International S.A. ("EDFI") to confirm the arbitral award rendered in Argentina in *EDF Int'l S.A. v. ENDESA Internacional S.A., et al.*, Case No. 12231/KGA/CCO/JRF. Not only have ***both*** sides sought to annul the award in Argentina, where it was rendered, but the award has been suspended by the Argentine Court of Appeals, making enforcement in this Court inappropriate.

## NATURE AND STAGE OF PROCEEDINGS

EDFI and YPF were both parties to an arbitration before an Argentine Arbitral Tribunal, which issued an award on October 22, 2007. EDFI and YPF both filed petitions to annul the parts of the award favorable to the other with the Arbitral Tribunal, which forwarded the petitions to the Court of Appeals in Commercial Matters in Buenos Aires in accordance with Argentine law. On April 22, 2008, the Court of Appeals suspended the award pending its consideration of the annulment petitions. Thereafter, on June 11, 2008, EDFI purported to serve YPF by Federal Express with its motion and petition for confirmation of the award.

## SUMMARY OF ARGUMENT

EDFI has failed to make proper service on YPF, requiring dismissal of its confirmation petition and denial of its motion on that threshold ground alone. Beyond that, even if jurisdiction over YPF had been obtained by proper service, the Court should deny EDFI's motion because the Court of Appeals in Argentina, the legal seat of the arbitration and the "primary jurisdiction" under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), has suspended the arbitral award pending its consideration of the requests for its annulment. Under these circumstances and well-settled law, this Court, as a

"secondary jurisdiction" for purposes of the New York Convention, should either deny or stay confirmation pending the proceedings on the annulment petition by the primary jurisdiction's courts in Argentina.[1]

## STATEMENT OF FACTS

This proceeding arises out of an arbitration under a March 30, 2001 sale and purchase agreement between EDFI, Astra Compañía Argentina de Petróleo S.A. ("Astra Capsa") and ENDESA International S.A. ("ENDESA") for stock held by Astra Capsa and ENDESA in two other Argentine companies, Electricidad Argentina S.A. and its subsidiary, Empresa Distribuidora y Comercializadora Norte, S.A. *See* Decl. of Charles D. Reed, dated March 24, 2008 ("Reed Decl."), Exs. C & D, submitted with EDFI's Petition and Motion. Two ancillary agreements, dated March 30 and March 31, 2001, provided for possible revisions of the purchase price under the sale and purchase agreement in the event of either a future electricity tariff revision (scheduled for August 31, 2002) or the "*desvinculación*," de-linking, of the official exchange rate of the Argentine peso and the U.S. dollar (if it occurred prior to December 31, 2001). *See id.* On April 4, 2001, Astra Capsa merged with YPF, and the surviving entity YPF succeeded to the assets and liabilities of Astra Capsa.

EDFI brought claims against YPF (and ENDESA) arguing that the term "*desvinculación*" had a broader meaning than mere currency devaluation and that while the official devaluation of the Argentine currency did not occur until January 2002, the "*desvinculación*" was complete as of December 21, 2001, entitling EDFI to additional payment. *See id.* YPF filed a counterclaim jointly with ENDESA claiming payment from EDFI related to the tariff revision. *See id.* The

---

[1]     EDFI's motion also seeks entry of judgment against YPF and attachment of YPF's ownership of the shares of YPF Holdings, Inc., a Delaware subsidiary of YPF, if such judgment is entered. Since confirmation cannot and should not be granted at this time, these other branches of EDFI's motion are premature at best, if not moot.

parties' contract provided for "any dispute that may arise with regard to the interpretation or performance of this AGREEMENT" to be decided by three arbitrators "who shall find in accordance with the substantive law of the Argentine Republic," with the seat of the arbitration in Buenos Aires. Reed Decl., Exs. A & B § 7.7.

The Argentine Arbitral Tribunal rendered its initial award on October 22, 2007, and subsequently modified it to correct typographical errors on December 21, 2007 and February 14, 2008 (together, the "Award"). Reed Decl., Exs. C & D. The Award found for EDFI on part of its claims, in the amount of $40 million, and for YPF on part of its counterclaims, in the amount of $11,066,150. The result was a net award to EDFI of $28,933,850 plus interest against YPF.

Unusually, *both* sides sought annulment of the Award by the Argentine courts under Argentine law. On November 5, 2007, EDFI filed a request for a partial annulment of the Award, alleging a host of errors in the Arbitral Tribunal's decision on YPF's counterclaim, and seeking to vacate that portion of the Award in its entirety. *See* Decl. of Carlos M. Tombeur, dated July 8, 2008 ("Tombeur Decl."), Ex. 2. The next day, November 6, 2007, YPF filed its own request for partial annulment, alleging error with respect to EDFI's "*desvinculación*" claim and, later, filed a further appeal requesting that the Award in favor of EDFI also be set aside as unconstitutional under Argentine law. *See* Tombeur Decl., ¶¶ 10-11 & Ex. 6. The Arbitral Tribunal, in accordance with Argentine law, referred these annulment requests to the Court of Appeals in Buenos Aires. *See* National Civil and Commercial Procedures Code, Sections 759 and 763, attached to Tombeur Decl. as Ex. 4.

EDFI somewhat airily refers to the parties' annulment petitions in Argentina in a single sentence stating that "[a]s allowed by Argentine law, both parties challenged aspects of the Final Award . . . ." Opening Br. in Support of Motion for Confirmation ("Op. Br.") at 3. This

reference to challenges to "aspects" of the Award considerably understates what the Argentine annulment proceedings actually involve. Both sides seek to vacate, in its entirety, every part of the Award in favor of the other: EDFI seeks to vacate the portion of the Award finding it liable on YPF's counterclaim, and YPF seeks to vacate the portion of the Award finding it liable on EDFI's claim. Among other things, EDFI asserts that the Award, to the extent it was against EDFI, was "completely arbitrary and unreasonable," Tombeur Decl., Ex. 2 at 9 (emphasis added), and that the Arbitral Tribunal's reasoning was "tortuous and contradictory," and filled with "inconsistencies and fallacies." *Id.* at 7 (emphasis added). YPF asserts that the portion of the Award in favor of EDFI exceeded the arbitrators' mandate to decide in accordance with Argentine law, and violated Argentine public policy ("public order") by disregarding the Argentine Convertibility Law No. 23,928 that determined in Section 1 the official Argentine peso to U.S. dollar exchange rate at the relevant time. Tombeur Decl., ¶ 12 & Ex. 6 at 14-15, 21, 78.

On April 22, 2008, the Court of Appeals in Buenos Aires issued an order suspending the Award. *See* Tombeur Decl., Ex. 10. The Court of Appeals concluded that since there was a challenge to the Award's validity, including an annulment appeal by EDFI, "the appeal filed must be declared to be suspensive in nature" and it "suspend[ed] the terms" of the Award. *See id.* ¶¶ II. & III. EDFI has not challenged that decision or sought to vacate it. As a result of this ruling by the court where the annulment proceedings are pending – which EDFI does not mention anywhere in its submission to this Court on its confirmation motion – the Award has been suspended by the competent authority of Argentina, the country in which and under the law of which the Award was made.

EDFI has nonetheless moved in this Court to confirm the Award – the same Award it is seeking to annul in the primary jurisdiction, Argentina, and that has been suspended there. This Court presently lacks jurisdiction to entertain that motion because YPF has not been properly served. And if it did have jurisdiction, for the reasons set forth below, it should exercise it either to deny EDFI's motion under Article V(1)(e) of the New York Convention or to stay it under Article VI of the New York Convention because the award has been suspended in the jurisdiction where it was rendered.[2]

## ARGUMENT

## I.

## EDFI FAILED TO PROPERLY SERVE YPF AND ACCORDINGLY THIS COURT LACKS JURISDICTION OVER YPF

EDFI has failed to serve YPF, a foreign corporation, in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361, 656 U.N.T.S. 162 (hereinafter, the "Hague Service Convention"). Accordingly, EDFI's petition to confirm the Award and its confirmation motion are not properly before this Court, and must be dismissed.

Enforcement of international arbitral awards by United States courts under the New York Convention is governed by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208 (the "FAA"). Under Section 208 of the FAA, the procedures of Chapter 1 of the FAA (9 U.S.C. §§

---

[2]  EDFI has also purported to serve Repsol YPF, the parent corporation of YPF, with an "exequatur" request in France, analogous to its present confirmation motion, even though the Award dismissed Repsol YPF from the arbitration because it was not a party to the relevant agreements, and the Arbitral Tribunal found no other basis for jurisdiction over it. *See* Reed Decl., Ex. D ¶¶ 4-6. Coupled with its motion in this Court, made without proper service on YPF and despite the suspension of the Award in Argentina, these actions smack of harassment.

1-14) apply to actions or proceedings under Chapter 2 to the extent they do not conflict with the New York Convention. 9 U.S.C. § 208.

Section 9 of the FAA provides in pertinent part that an application for confirmation of an award must be served on a non-resident adverse party "in like manner as other process of the court." 9 U.S.C. § 9. Since YPF is not a resident of Delaware, EDFI's petition and motion for confirmation must therefore be served on it in conformity with the same procedures required for service of a summons and complaint or other original process in a civil action in the federal courts. *See Americatel El Salvador, S.A. De C.V. v. Compania De Telecomunicaciones De El Salvador, S.A. De C.V.*, No. 07-21940-CIV, 2007 WL 2781057, at *1 (S.D. Fla. Sept. 19, 2007) (holding that in the absence of explicit guidance under the FAA, Federal Rule of Civil Procedure 4, governing service of a complaint and summons, shall provide "reasonable guidance" about how to serve a petition for confirmation of an arbitration award on an extraterritorial respondent); *see also Marine Trading Ltd. v. Naviera Comercial Naylamp S.A.*, 879 F. Supp. 389, 392 (S.D.N.Y. 1995) (mailing of petition to confirm arbitral award to respondent outside United States was not proper service under FAA).

Service of process upon foreign corporations outside a judicial district of the United States is governed by Rules 4(h)(2) and (f) of the Federal Rules of Civil Procedure, under which service must be effected upon a corporation in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Service Convention]," if such means exist. Fed. R. Civ. P. 4(f)(1). It is well-settled that compliance with the Hague Service Convention is mandatory when serving a foreign defendant abroad in a signatory country, such as Argentina. *See Volkswagenwerk A.G. v. Schlunk*, 486 U.S. 694, 699 (1988); Fed. R. Civ. P. 4(f)(1).

Articles 2 through 7 of the Hague Service Convention set forth the procedures for effecting proper service abroad. *See* Hague Service Convention, arts. 2-7. Each signatory nation to the Hague Service Convention is required to designate a Central Authority to serve as its agent for service. *See id.* art. 2. Parties seeking to sue foreign defendants in signatory countries are required to contact the designated Central Authority to request that it execute service of process. *See id.* art. 3. The Central Authority of the destination country is then responsible for serving, or arranging for service, of the documents and thereafter completing a certificate of its service and sending it to the requesting party. *See id.* arts. 5 & 6. Argentina has designated its Ministry of Foreign Affairs, International Trade and Culture as its Central Authority for purposes of the Convention.

Importantly, although the Hague Service Convention has been construed to permit alternative means of service, including direct mailing, under Article 10(a), these alternative means are available *only* if the receiving state has not objected to them. *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 288 (3d Cir. 1981) ("The treaty merely provides a mechanism by which a plaintiff authorized to serve process under the laws of its country can effect service that will give appropriate notice to the party being served ***and will not be objectionable to the country in which that party is served***.") (emphasis added); *Dimensional Commc'ns., Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 655 (D.N.J. 2002) (same) (citations omitted); *see also* Hague Service Convention, art. 10(a) ("***[p]rovided the State of destination does not object***, the present Convention shall not interfere with (a) the freedom to send judicial documents, by postal channels, directly to persons abroad . . .") (emphasis added). Argentina has made such objections in its reservations to the Hague Service Convention, stating its explicit objection to the use of alternative methods of transmission pursuant to Article 10. *See* Hague

Service Convention, at n.1a(2) & (3) ("The ARGENTINE REPUBLIC opposes to [sic] the use of methods of transmission pursuant to Article 10."). Thus, service in Argentina must be accomplished solely through the Central Authority, and cannot be made by direct mailing to the defendant there.

EDFI has manifestly failed to serve YPF under these rules. Its attempt at service consisted of its sending its petition and motion directly to YPF in Argentina – via FedEx from its Delaware counsel. It did *not* serve its papers through the Central Authority in Argentina, as the Hague Convention requires. *See* Decl. of Alejandro D. Quiroga López, dated July 8, 2008 ("Quiroga Decl."), ¶¶ 4-6 & Ex. 1. And although it included in its package to YPF a Request For Service Abroad Of Judicial Or Extrajudicial Documents, a Certificate under Article 6 of the Hague Service Convention and a Summary Of The Document To Be Served, the Certificate, by which the Central Authority is to confirm service of the pleadings, is blank, reflecting the fact that papers were not sent to the Central Authority by EDFI, and that the latter in turn did not serve them on YPF. *See id.*

Because EDFI has failed to serve its petition or accompanying motion papers on YPF in accordance with the Hague Service Convention and the Federal Rules of Civil Procedure, the Court may not exercise jurisdiction over YPF. *See, e.g., Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Shurr v. Mun. City of Newark, Del.*, No. Civ. 03-523-SLR, 2004 WL 332508, at *1 (D. Del. Jan. 28, 2004) ("Personal jurisdiction must

be effected through proper service of process, and actual notice by a defendant does not satisfy this constitutional requirement.") (citations omitted).

Accordingly, on that ground alone, EDFI's motion must be denied and its petition dismissed, without prejudice to renewal if proper service is made.

## II.

### THE COURT SHOULD EITHER DENY OR STAY THE CONFIRMATION MOTION BECAUSE THE ARBITRAL AWARD HAS BEEN SUSPENDED PENDING ANNULMENT PROCEEDINGS

Even if it had jurisdiction to consider EDFI's motion to confirm the Award, the Court should either deny the motion or, at a minimum, stay confirmation pending the Argentine annulment proceeding, because the Argentine Court of Appeals, the competent authority of the country in which the Award was made, has suspended the Award.

A.    Confirmation Should Be Denied Because The Award Has Been Suspended In Argentina

EDFI seeks to confirm the Award under § 207 of the FAA, which provides that the court shall confirm an award under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention." 9 U.S.C. § 207.

Under Article V of the New York Convention:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that: . . . *(e) [t]he award* has not yet *become binding on the parties, **or has been sent aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.***[3]

---

[3]    Under the New York Convention framework, the country in which or under the arbitral law of which the award was made is typically referred to as the "primary" jurisdiction, and all other countries in whose courts recognition and enforcement are sought are referred to as "secondary" jurisdictions. Only the primary jurisdiction has the power to

EDFI, citing Article V, concedes in its opening brief that confirmation of an award may be refused if the award has been set aside or suspended, but nonetheless argues that the Award should be confirmed here since "[t]he fact that the challenges to aspects of the Final Award are pending does not mean that the Argentinean courts have 'set aside or suspended' the award." Op. Br. at 6-7.

Whatever may have been the case when those words were penned, they are untrue today. On April 22, 2008, the Court of Appeals in Buenos Aires issued an order unequivocally stating that "the appeal filed must be declared to be suspensive in nature," and, therefore, the court will "suspend the terms" of the Award. *See* Tombeur Decl., Ex. 10 ¶¶ II. & III.[4] Since the Award "has been set aside or suspended" by the Argentine Court of Appeals, the "competent authority of the country in which, or under the law of which, that award was made," Article V(1)(e) of the New York Convention mandates that this Court should refuse EDFI's request for enforcement of the Award in the United States.

EDFI's reliance on *Ukrvneshprom State Foreign Economic Enterprise v. Tradeway, Inc.*, No. 95 Civ. 10278, 1996 WL 107285 (S.D.N.Y. March 12, 1996), Op. Br. at 6, is completely misplaced on these facts. The question in *Ukrvneshprom* was whether a Ukrainian arbitral award was "binding" under Article V(1)(e) of the Convention. *See id.* at **3-4. The district court

---

[4]    annul the award with effect in all other jurisdictions, and the primary jurisdiction has plenary power to annul an award based on any grounds provided in its domestic law. *See, e.g., TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004). In this case, Argentina is the primary jurisdiction and the United States is a secondary jurisdiction.
    The Court of Appeals in Buenos Aires notified EDFI of its decision suspending the Award on or before May 5, 2008. *See* Tombeur Decl., ¶ 19. EDFI did not mail its confirmation petition and motion to YPF until June 9, 2008, more than a month later. *See* Quiroga Decl., ¶¶ 4-5 & Ex. 1. And although the petition and motion were originally filed on March 25, 2008, EDFI did not amend these documents to reflect this decisive development.

found the award "binding" and therefore enforceable in the United States, because the Ukraine Supreme Court had stated that it had *not* suspended the award pending its consideration of an appeal from the Kiev City Court's rejection of the respondent's annulment petition there. *See id.* The situation here is precisely the opposite:  the Award *has* been "suspended" by the Court of Appeals in Buenos Aires, and therefore should not be enforced under Article V(1)(e).

The fact that Article V uses the words "*may* be refused," rather than the word "must," in specifying the circumstances for denying confirmation, is largely without significance in this context.  The overwhelming weight of authority holds that when an award has been set aside or suspended in the primary jurisdiction under that country's governing arbitration law, courts in a secondary jurisdiction where the award is sought to be confirmed should, under both the basic structure of the New York Convention and as a matter of comity, decline confirmation or enforcement.  *See, e.g., TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 935 (D.C. Cir. 2007) (explaining that because the court in Colombia, where the arbitration occurred, acted within its authority in annulling the arbitral award, petitioner had "no cause of action under the FAA or the New York Convention to enforce the award in a Contracting State outside of Colombia"); *Baker Marine (Nigeria) Ltd. v. Chevron (Nigeria) Ltd.*, 191 F.3d 194, 197 (2d Cir. 1999) (declining confirmation where petitioner "has shown no adequate reason for refusing to recognize the judgments of the Nigerian court" setting aside an award rendered in Nigeria); *Spier v. Calzaturificio Tecnica , S.p.A.*, 71 F. Supp. 2d 279 (S.D.N.Y. 1999) (denying confirmation of Italian arbitral award that had been nullified by Italian courts); Albert Jan van den Berg, *Enforcement of Annulled Awards?*, 9 ICC Int'l Ct. Arb. Bull., Nov. 1998, at 15 ("The advantage of the rule is that if the award has been set aside in the country of origin, the game is clearly over. . . .  Thus, in the case of a questionable award, a party cannot shop around the world in

order to find a flexible court somewhere which is willing to enforce such an award."). Under these rules, this Court must decline enforcement based on the suspension decision of the Argentine court.[5]

This is particularly the case where *both* sides have sought annulment of every aspect of the Award that was decided against them, a fact which the Argentine court found significant in suspending the Award. It would be incongruous, to say the least, to permit EDFI to enforce the provisions of the Award that it likes, while it is simultaneously seeking annulment of the portions it does not like based on fundamental criticisms of the manner in which the arbitration was conducted, and where the primary jurisdiction's court has already suspended the Award in response to the parties' annulment requests.

**B.    Confirmation Should Be Stayed Pending The Resolution Of The Argentine Annulment Proceedings**

In the alternative, this Court should stay confirmation of the Award pending the resolution of the Argentine annulment proceedings. Article VI of the New York Convention provides that "[i]f an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award . . . ." Here, the award has actually been suspended, making Article V(1)(e) the relevant authority, but even if that were not the case, where both EDFI and YPF have applied to

---

[5]    In one much discussed case, *Matter of Chromalloy Aeroservices*, 939 F. Supp. 907 (D.D.C. 1996), the district court confirmed an Egyptian arbitral award in the United States, even though it had been set aside in Egypt, the primary jurisdiction. *Chromalloy* was roundly criticized, *see, e.g., Baker Marine*, 191 F.3d at 197; *Spier*, 71 F. Supp. 2d at 287, and has been limited to its facts, if not effectively overruled, by the D.C. Circuit's later decision in *TermoRio*.

set aside the Award in Argentina, this would be a particularly appropriate case for this Court to withhold decision on confirmation until the annulment proceedings have been resolved.

*Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310 (2d Cir. 1998), is the leading United States decision on the question of staying the enforcement of a foreign arbitral judgment under Article VI of the New York Convention pending the resolution of parallel foreign annulment proceedings when the award has not already been suspended. In *Europcar*, the Second Circuit promulgated a six-prong test to determine whether to adjourn the petitioner's request for enforcement of an Italian arbitral award pending the resolution of the respondent's appeal seeking to have the award to be set aside by a court in Italy, the primary jurisdiction. These factors, none of which is dispositive, include:

> (1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
> (4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
> (5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed . . . , the party seeking enforcement may receive "suitable security" . . .
>
> (6) any other circumstances that could tend to shift the balance in favor of or against adjournment.

*Id.* at 317-18.

Applying the *Europcar* factors here, it is evident that adjournment is warranted. The following facts are especially salient.

First, the Argentine court has already taken preliminary action on the annulment petitions by suspending the Award. This critical fact about the status of the Argentine proceedings should itself be grounds for denying confirmation of the Award in the United States at this time; *see* Point IIA, *supra*, and at a minimum should lead this Court to stay confirmation until the Argentine proceeding has been fully adjudicated.

Second, Argentina, the primary jurisdiction, will provide greater scrutiny to the Award under a less deferential standard of review than this Court, and is obviously in the best position to determine whether the award violated its laws, which govern the arbitration.

Third, **both sides** are challenging the Award in Argentina, and EDFI actually launched its challenge before YPF did. **Both** challenges were initiated before EDFI began the present confirmation proceeding, and the fact that both parties are objecting to fundamental parts of the Award suggests strongly that neither of them is acting to hinder or delay resolution of the dispute.[6]

Finally, there is no hardship to EDFI in postponing confirmation until the parties' annulment proceedings in Argentina have been concluded. YPF is a major international energy company with current assets totaling more than $3.5 billion, including as EDFI has noted, shares of a wholly-owned Delaware corporation. EDFI has not even suggested, much less provided any evidence, that YPF will lack the wherewithal to honor the Award if it survives the Argentine

---

[6] This is in marked contrast to *Ukrvneshprom*, where the court declined to adjourn its decision on enforcement under Article VI of the Convention since the respondent was engaged in obstructive litigation tactics. *See Ukrvneshprom*, 1996 WL 107285, at \*\*7-8.

annulment proceedings, or intends not to pay the Award under the circumstances. To the contrary, YPF intends to honor whatever the ultimate decision of the Argentine courts will be.

While the district court in *Europcar* ultimately did not have occasion to apply the circuit court's test on remand because the Italian annulment proceedings were concluded first, courts have since applied the *Europcar* framework to adjourn or stay confirmation actions in the face of annulment proceedings in the country where the award was rendered. For example, in *Nedagro B.V. v. Zao Konversbank*, No. 02 Civ. 3946, 2003 WL 151997, at *7 (S.D.N.Y. Jan. 21, 2003), the court granted the respondent's motion to defer proceedings for the enforcement of a Russian arbitral award where challenges to the award were still pending before the Russian court. *See also Higgins v. SPX Corp.*, No. 1:05-CV-846, 2006 WL 1008677, at *4 (W.D. Mich. Apr. 18, 2006) (granting motion to stay enforcement pending the final determination of a nullification suit filed by the defendant in Brazil); *Jorf Lasfar Energy Co., S.C.A. v. AMCI Exp. Corp.*, No. Civ. A. 05-0423, 2005 WL 3533128, at **3-4 (W.D. Pa. Dec. 22, 2005) (staying enforcement of a French arbitral award until the defendant's appeal had been decided by a French court); *Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*, No. 04 C 7731, 2005 WL 947126, at **3-4 (N.D. Ill. Apr. 12, 2005) (granting a stay of confirmation despite the fact it would "cause an immediate delay in the resolution of the dispute," since it would ultimately expedite resolution of the dispute if the French court decided to set aside the award); *Consorcio Rive S.A. v. Briggs of Cancun, Inc.*, No. Civ. A. 99-2204, 1999 WL 1009806, at *2 (E.D. La. Nov. 5, 1999) (staying enforcement pending Mexican proceedings); *Spier v. Calzaturificio S.p.A.*, 663 F. Supp. 871, 875 (S.D.N.Y. 1987) (staying confirmation petition pending determination of annulment proceeding

by Italian courts);[7] *Fertilizer Corp. of India v. IDI Mgmt., Inc.*, 517 F. Supp. 948, 962 (D.C. Ohio 1981) (staying confirmation pending previously-filed annulment proceeding in India "to avoid the possibility of an inconsistent result").

By contrast, where courts have denied petitions to deny or delay enforcement of an award, the facts of those cases are readily distinguished. In *Sarhank Group v. Oracle Corp.*, No. 01 Civ. 1258, 2002 WL 31268635, at *6 (S.D.N.Y. Oct. 9, 2002), *vacated on other grounds*, 404 F.3d 657 (2d Cir. 2005), the New York district court did not grant the respondent's petition to delay enforcement of an Egyptian arbitration award where the Egyptian Supreme Court had refused to stay the execution of the award pending the appeal. Here, the Argentine Court of Appeals has suspended the Award pending the annulment proceedings. In *MGM Productions Group, Inc. v. Aeroflot Russian Airlines*, No. 03 Civ. 0500, 2003 WL 21108367, at **5-6 (S.D.N.Y. May 14, 2003), *aff'd on other grounds*, 91 Fed. Appx. 716 (2d Cir. 2004), the New York district court refused to grant a stay of a Swedish arbitration award pending the outcome of an appeal in Sweden that was filed only *after* the confirmation proceedings began in the United States and the Swedish court had refused to stay enforcement pending the appeal. Here, in contrast, both parties filed appeals in Argentina months *before* EDFI's initiation of the instant confirmation proceeding, and the Argentina Court of Appeals suspended the Award pending the outcome of those claims.

What makes the instant case particularly appropriate for denial or stay of confirmation is, of course, the fact that EDFI itself is seeking annulment of a significant part of the very award that it seeks to enforce, on grounds that, if true, would be every bit as powerful as the grounds

---

[7]     After the Italian courts granted annulment, the *Spier* court denied confirmation under Article V(1)(e) of the Convention, demonstrating the wisdom of its earlier stay decision. *Spier*, 71 F. Supp. 2d at 288-89.

advanced by YPF to set aside the Arbitral Tribunal's decisions as a matter of governing Argentine arbitral law, and to cast doubt on the quality of its reasoning. Since EDFI can advance no reason why it needs immediate confirmation under these circumstances, it would be a major affront to international comity and the structure of the New York Convention for this Court to entertain its confirmation request while the Argentine court in the primary jurisdiction, where both sides have sought relief from the Award, has suspended the Award while determining whether to annul it.

## CONCLUSION

For the foregoing reasons, the Court should dismiss EDFI's petition and deny its motion for lack of proper service. If the Court reaches the merits of the petition and motion, it should deny them because the Award has been suspended in Argentina, or alternatively, stay proceedings on confirmation until the Argentine annulment proceeding has been resolved.


OF COUNSEL:

Jonathan I. Blackman
Matthew D. Slater
Jordana E. Lambert
CLEARY GOTTLIEB STEEN &
    HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000

Dated: July 16, 2008

POTTER ANDERSON & CORROON LLP

By: _____
    Peter J. Walsh, Jr. (#2437)
    David E. Moore (#3983)
    1313 N. Market Street
    Hercules Plaza, 6th Floor
    P. O. Box 951
    Wilmington, DE 19899
    Tel: (302) 984-6000
    pwalsh@potteranderson.com
    dmoore@potteranderson.com

*Counsel for Respondent YPF S.A.*

## CERTIFICATE OF SERVICE

I, Peter J. Walsh, Jr., hereby certify that on July 16, 2008, the attached document was served via hand delivery and was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

> Gregory J. Varallo, Esquire
> Steven J. Fineman , Esquire
> Richards, Layton & Finger
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899

Peter J. Walsh, Jr. (DSBA No. 2437)