IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EDF INTERNATIONAL S.A., | : |
| Petitioner, | : |
| v. | : Civil Action No. 08-167-JJF |
| YPF S.A., | : |
| Respondent. | : |

John M. Townsend, Esquire and Charles D. Reed, Esquire of HUGHES, HUBBARD & REED, L.L.P., Washington, D.C.
Gregory V. Varallo, Esquire and Steven J. Fineman, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.

Attorneys for Petitioner EDF International S.A.

Jonathan I. Blackman, Esquire; Matthew D. Slater, Esquire and Jordana E. Lambert, Esquire of CLEARY, GOTTLIEB, STEEN & HAMILTON, L.L.P., New York, New York.
Peter J. Walsh, Jr., Esquire and David E. Moore, Esquire of POTTER, ANDERSON & CORROON, L.L.P., Wilmington, Delaware.

Attorneys for Respondent YPF S.A.

**O P I N I O N**

November 20, 2008
Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is a Petition To Confirm Arbitration Award (D.I. 1) filed by Petitioner, EDF International S.A. ("EDFI"), and a Motion To Dismiss Petition to Confirm Arbitration Award (D.I. 9) filed by Respondent, YPF, S.A. ("YPF"). For the reasons discussed, the Court will deny the petition to confirm the arbitral award and grant the motion to dismiss.

## I.   BACKGROUND

This lawsuit arises out of a sale and purchase agreement entered into on March 30, 2001, pursuant to which petitioner EDFI purchased the shares of two Argentinean companies from ENDESA Internacional S.A. and Astra Compañía Argentina de Petróleo S.A., the latter of which merged with respondent YPF, with YPF as the surviving entity. (D.I. 3 at 1-2.) The agreement contained an arbitration provision requiring that "any dispute that may arise with regard to the interpretation or the performance of this AGREEMENT" be decided by three arbitrators "who shall find in accordance with the substantive law of the Argentine Republic," with the "seat of the arbitration" in Buenos Aires, Argentina. (D.I. 4, Exh. B at 4-5.)

The parties executed two supplements to the initial agreement contemplating modification of the purchase price based on two contingencies.  First, on March 30, 2001, the parties

1

executed an agreement providing for a change of the purchase price based on a tariff revision scheduled for August 31, 2001. (D.I. 3 at 2.) Second, on March 31, 2001, the parties executed an agreement providing for a modification of the purchase price if the "desvinculación," or de-linking, of the Argentinian peso with respect to the U.S. dollar took place before December 31, 2001. (Id.)

In July 2002, EDFI filed a request for arbitration, alleging that it was entitled to additional payment pursuant to the "desvinculación" contingency. (D.I. 10 at 2.) YPF counterclaimed, alleging that it too was entitled to additional payment, but pursuant to the tariff revision contingency. (Id. at 2-3.) In October 2007, the arbitral tribunal rendered a decision, finding for EDFI in the amount of $40 million and for YPF in the amount of $11,066,150, the net result being an award of $28,933,850 to EDFI. (D.I. 4, Exh. D.) Though the arbitration agreement provided that the arbitral award was "not subject to appeal," (D.I. 4, Exh. B at 5), both parties nonetheless sought annulment of the award by the Court of Appeals in Buenos Aires. EDFI alleged that the portion of the award granting $11,066,160 to YPF did not reflect the express terms of the March 30, 2001 supplemental agreement and violated EDFI's right to due process, yielding a "result that is arbitrary, irrational and contrary to public policy." (D.I. 20 ¶ 9.) For

its part, YPF alleged that the portion of the award granting $40 million to EDFI exceeded the arbitrator's mandate to decide in accordance with Argentinean law and violated public policy by disregarding certain Argentinean laws. (D.I. 10 at 4.)

On March 18, 2008, respondent YPF petitioned the Buenos Aires Appeals Court for a declaration that their challenge to the arbitral award effected a stay of the award's terms. (D.I. 20, Exhs. 1 and 2.) Notwithstanding the fact that it had also filed a challenge to the arbitral award, EDFI filed the instant petition to enforce the arbitral award one week later. (D.I. 1) In the midst of the parties' briefing of this petition, the Buenos Aires Appeals Court granted YPF's request that the appeal be declared to have a staying effect on the arbitral award. In so ruling, the Appeals Court analogized the appeal of the arbitral award to the appeal of an Argentinean judgment, where, only in exceptional cases, is the appeal granted without a stay in the proceedings. (D.I. 20, Exh. 5 at 2.) The Appeals Court further noted the fact that EDFI had filed its own challenge to the arbitral award, calling this a "conclusive" reason to grant YPF's request. (Id.)

## II. PARTIES' CONTENTIONS

By its petition, EDFI requests the Court to confirm the arbitral award and enter judgment in EDFI's favor in the amount of $28,933,850.00 plus interest. (D.I. 1 at 6.) EDFI brought

3

the petition pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 202 et seq. ("the New York Convention").

In response, by way of its motion to dismiss the award, YPF contends that the Court should deny EDFI's petition pursuant to Article V(1)(e) of the New York Convention, which gives this Court discretion to refuse to confirm an arbitral award if it "has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."[1]  United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958).  In this regard, YPF points to the April 22, 2008 order of the Court of Appeals in Buenos Aires holding that the parties' dual appeals of the award "must be declared to be suspensive in nature."[2]  (D.I. 12, Exh. 10 at 4.) YPF further contends that it would be "incongruous" to permit

---

[1] If the Court were to decide not to dismiss EDFI's petition outright, YPF asks that we stay these proceedings pending completion of the Argentinean appeal.  Given the Court's decision to dismiss the petition outright, the Court need not address YPF's alternate request.

[2] The parties rely on different translations of the Argentine Appeals Court's order.  EDFI's translation of the order is that the "challenge filed has staying effects."  (D.I. 20, Exh. 4 at 2.)  Thus, EDFI contends that the Order of the Appeals Court was "suspensive," while YPF contends that the order had "staying effect."  In its reply brief, EDFI does not contend that there is a meaningful distinction between the two translations, and the Court will not interpret the two translations as being substantively different.

4

EDFI to enforce portions of the award here while at the same time complaining in an Argentinean court that other aspects of the award are "completely arbitrary and unreasonable," "tortuous and contradictory" and filled with "inconsistencies and fallacies." (D.I. 10 at 4 (citing D.I. 12, Exh. 2 at 7,9).)

In response to YPF's motion to dismiss, EDFI points to the Northern District of Illinois decision <u>Alto Mar Girassol v. Lumbermens Mut. Cas. Co.</u>, No. 04-C-7731, 2005 U.S. Dist. LEXIS 7479 (N.D. Ill. Apr. 12, 2005). In <u>Alto Mar Girassol</u>, the court considered whether it should decline to refuse a French arbitral award where a French statute required execution of the award to be stayed pending appeal. <u>Alto Mar Girassol</u>, 2005 U.S Dist. LEXIS 7479 at *8-*9. The court chose not to decline enforcement on the basis of the statutory stay, explaining that Article V(1)(e) of the New York Convention required a "competent authority" to suspend the award, not just a statutory stay. The court further noted that failing to enforce the award would be inconsistent with the New York Convention's purpose of facilitating enforcement of arbitral awards. <u>Id.</u> at *10-*11. Nevertheless, the court in <u>Alto Mar Girassol</u> chose to stay its own proceedings pending review of the appeal, explaining that this would reduce the complexity and cost of the case and promote international comity. <u>Id.</u> at *11-*12.

## III. DISCUSSION

### A. Legal Standard

Section 201 of Title 9 of the United States Code states that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 [hereinafter "the New York Convention"], shall be enforced in United States Courts in accordance with this chapter." Article I of the Convention states that it "shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between people, whether physical or legal." The Convention applies to the present arbitral award since it was awarded in Argentina and EDFI seeks to enforce the award in the United States.

Federal law requires that United States courts confirm foreign arbitral awards falling under the Convention except in very limited circumstances. Section 207 of Title 9 of the United States Code states that:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

Because EDFI moved for confirmation within three years of receiving its arbitral award, this Court is required to confirm

6

the arbitral award unless YPF can prove a ground for refusal as set out in the Convention.

The 1958 Convention shifted the burden of proof in an enforcement action to the party opposing enforcement and limited its defenses to the seven set forth in Article V.  See Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA), 508 F.2d 969, 973 (2d Cir. 1974).  Article V of the Convention states that "[r]ecognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if the party furnishes to the competent authority where the recognition and enforcement is sought, proof that [one of the exceptions to recognition applies]." [3]

---

[3] The exceptions allowable under Article V of the New York Convention are:

> (a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
> (b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
> (c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or
> (d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the

7

B.  Decision

After reviewing the parties' arguments in light of the requirements of the New York Convention, the Court declines to confirm the arbitral award.

The Court cannot locate and the parties have not identified any cases having facts well matched to those of the instant dispute. YPF directs the Court to three cases in which a foreign court completed its review of an arbitral award and then chose to set it aside completely.[4] However, in the instant case, the

---

> agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
> (e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
>
> Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that (a) the subject matter of the difference is not capable of settlement by arbitration under the law of that country; or (b) the recognition or enforcement of the award would be contrary to the public policy of that country.

United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 10 June 1958).

[4] See Termorio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 931 (D.C. Cir. 2007) (declining to enforce an arbitral award after a Colombian court concluded the arbitration was not conducted in accordance with Columbian law); Baker Marine, Ltd. v. Chevron, Ltd., 191 F.3d 194, 196 (2d Cir. N.Y. 1999) (declining to enforce an arbitral award after a Nigerian court concluded that the arbitrators had, among other things, "improperly awarded punitive damages, gone beyond the scope of

arbitral award has not yet been set aside. It has merely been suspended pending review by the Argentinean courts. In this respect, the facts of this case more closely parallel <u>Alto Mar Girassol</u>. However, there are key differences between <u>Alto Mar Girassol</u> and the instant dispute, and these differences are more illuminating than the similarities. Specifically, unlike as in <u>Alto Mar Girassol</u>, the suspension of the award here was not done pursuant to statute, an issue that was critical to the <u>Alto Mar Girassol</u> court in light of the New York Convention's requirement that the award be suspended by "a competent authority" for the court to even consider declining enforcement. <u>See Alto Mar Girassol</u>, 2005 U.S. Dist. LEXIS 7479 at *10-*11. Rather, it was the Buenos Aires Court of Appeals that declared that the appeal would stay the execution of the arbitral award. YPF argues that this case is nonetheless like <u>Alto Mar Girassol</u> because the Argentine court analogized the situation to the appeal of an Argentinean judgement, where proceedings are almost always stayed pending appeal. (D.I. 18 at 15.) In this respect, EDFI contends, the stay at issue here is, like the stay in <u>Alto Mar Girassol</u>, "automatic."

---

the submissions, incorrectly admitted parole evidence, and made inconsistent awards"); <u>Spier v. Calzaturificio Tecnica, S.p.A.</u>, 71 F. Supp. 2d 279, 281-282 (S.D.N.Y. 1999) (declining to enforce an arbitral award after Italian courts concluded that the arbitral body exceeded its powers).

However, the opinion of the Argentine Appeals Court does not reflect the same sort of "automatic" statutory stay at issue in <u>Alto Mar Girassol</u>.  Indeed, the Appeals Court explained that the "law is silent" as to whether the general rule applicable to the appeal of an Argentinean judgment was also applicable, "either by analogy or implication," to the situation presented.  (D.I. 20, Exh. 4 at 1.)  Thus, the Appeals Court relied on an "indicator" in a treatise suggesting that staying execution of the award pending appeal would be "compatible" with the annulment proceedings.  (<u>Id.</u> at 2.)  Far from a decisive stay order, this language and reasoning reflects some uncertainty on the part of the Appeals Court.  Indeed, the mere fact that the Argentine Appeals Court saw fit to prepare a reasoned opinion on the issue demonstrates that a stay of the award's execution was not a pre-ordained formality.

Furthermore, although the analogy to the appeal of an Argentinean judgment was no doubt important to the Appeals Court, what proved ultimately "conclusive" was the fact that both parties had filed challenges to the arbitral award.  (D.I. 20 Exh. 4 at 2.)  That the Argentinean Appeals Court considered this fact so critical in concluding a stay was necessary demonstrates that the matter did not, as EDFI contends, turn exclusively on the fact that appeals of Argentinean judgments generally result in a stay.  Accordingly, the Court concludes that, unlike as in

10

Alto Mar Girassol, this is a case where a "competent authority" exercised its power to suspend execution of the arbitral award.

As a secondary argument, YPF contends that the Argentinean Appeals Court specifically considered YPF's "precautionary" request to enjoin foreign enforcement of the arbitral award, but chose not to do so, leading to the conclusion that the Appeals Court countenanced foreign enforcement. (D.I. 18 at 15.) The Court disagrees with this assessment of the Appeals Court opinion. According to EDFI's translation of the Appeals Court opinion, the Appeals Court concluded that it was "unnecessary" to render an opinion on YPF's "precautionary" request that foreign enforcement be enjoined specifically in light of its decision that the parties' appeals had staying effects. (D.I. 20, Exh. 4 at 2.) Thus, the Argentine Appeal Court was ostensibly of the opinion that its stay would actually moot foreign enforcement proceedings, such that an additional order was "unnecessary."

Notably, although the court in Alto Mar Girassol rejected the notion that a statutory suspension of arbitral awards precluded foreign enforcement of arbitral awards, it nevertheless declined to immediately enforce an award that was subject to a statutory suspension. Alto Mar Girassol, 2005 U.S. Dist. LEXIS 7479 at *11-*12. Instead, the court chose to stay its own proceedings pending review of the award in French courts. Id. In so doing, the court explained that a stay would reduce the

11

overall complexity and cost of the litigation and comport with international comity. Id. The Court agrees with this reasoning. However, given that a competent authority (i.e., the Buenos Aires Appeals Court) has in fact suspended the award, the Court will deny EDFI's petition outright rather than simply stay the proceedings. Where both parties have (1) ignored the fact that their arbitration agreement calls for the results of arbitration to not be "subject to appeal," and (2) challenged the award as being contrary to law, arbitrary, and in violation of public policy, the Court will not preserve an action to enforce the results of arbitration.

### IV. CONCLUSION

For the foregoing reasons the Court will deny EDFI's petition and grant YPF's motion to dismiss.

An appropriate Order will be entered.